UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CASE NO.: 1:11-CR-26-HAB |
| | ) | |
| CHARLEY J. GONZALEZ III | ) | |

## OPINION AND ORDER

Charley J. Gonzalez III ("the Defendant") filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) (ECF No. 493). Pursuant to this Court's General Order 2020-11, the Court referred his motion to the Northern District of Indiana Federal Community Defenders, Inc. ("FCD") for it to consider representing the Defendant with respect to his motion. (ECF No. 495). The FCD filed a Notice of Non-Representation which, in turn, led to Government's filing of its response to the Motion. (ECF No. 497). The Defendant did not reply. For the following reasons, the Defendant's Motion will be DENIED.

## PROCEDURAL BACKGROUND

On October 9, 2014, following the Defendant's guilty plea to conspiracy to possess with intent to distribute 5 kilograms or more of cocaine (Count 1s) and possession of a firearm in furtherance of a drug trafficking crime (Count 3s), the Defendant was sentenced to 240 months on the drug count and a consecutive 60 months on the gun count. Gonzalez was part of a larger conspiracy that between January and April 2011, distributed more than 5 kilograms of cocaine. Additionally, 501.6 grams of heroin, cocaine, U.S. currency and a loaded gun were seized from the Defendant's residence during the execution of the search warrant. The Defendant's sentence of 300 months was a result of a binding plea agreement. Without the binding term, the Defendant

was facing a guidelines range of imprisonment of 262-327 months and, if the government had filed an 851 enhancement, the Defendant would have faced mandatory life imprisonment.

The Defendant is currently housed at the Federal Correctional Institution, Milan, Michigan with an anticipated release date of July 30, 2032.

## DISCUSSION

The Defendant's Motion requests compassionate release. Generally, a court is statutorily prohibited from modifying a term of imprisonment once imposed. *See* 18 U.S.C. § 3582(c). A handful of statutory exceptions exist, however, one of which allows a court to grant an inmate compassionate release if the inmate meets certain requirements. *See* 18 U.S.C. § 3582(c)(1)(A). Under this provision, a court may not modify a term of imprisonment except that –

(1) in any case --

   (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, . . . finds that—

   (i) extraordinary and compelling reasons warrant such a reduction …

   … and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A)(i).

The Government concedes that the Defendant has exhausted his administrative remedies at his facility and that his motion is properly before the Court. Thus, the Court turns to the substance of the Defendant's request, his contention that he has demonstrated "extraordinary and compelling reasons" for his release.

The Defendant asserts that he should be released from custody due to "medical complications dealing with Hepatitis C" and obesity, infirmities that he believes increase his risk of serious complications from COVID-19. Additionally, he references the hardships his family has faced during the last nine years of his incarceration. Finally, he states that a BOP staff member was forced to work with COVID-19 and thus, the BOP shows a "disregard for the lives of low security inmates." (ECF No. 493 at 1).

Congress did not define "extraordinary and compelling reasons" in the statute, instead delegating the matter to the Sentencing Commission to promulgate a policy statement that "describe[s] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). The policy statement, contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes, in line with the statutory directive in § 3582(c)(1)(A), requires a court to make several findings.

First, the court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). To this end, a court is to consider the medical condition of the defendant, his age, his family circumstances, and whether there exists in the defendant's case an extraordinary or compelling reason "other than or in combination with" the other reasons described in the Application Notes. U.S.S.G. § 1B1.13, Application Notes 1(A)–(D). Second, the Court must determine whether the Defendant is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Additionally, when the Defendant moves for a reduction based on COVID-19, Courts have also considered: (1) the specificity of the defendant's COVID-19 concerns, (2) whether the defendant has a medical condition that makes him especially susceptible to the dangers of COVID-19, and (3) the extent that the defendant's release would mitigate or aggravate the COVID-19 pandemic. *See United States v. Council*, No. 1:14-CR-14-5-TLS-SLC, 2020 WL 3097461, at *4 (N.D. Ind. June 11, 2020); *United States v. Barrett*, No. 2:17-CR-1, 2020 WL 3264112, at *3 (N.D. Ind. June 17, 2020); *see also United States v. Davis*, No. 2:19-CR-74-3, 2020 WL 1951652, at *1–2 (N.D. Ind. Apr. 23, 2020) (applying similar factors to consider whether there was a "compelling reason" for pretrial release due to the COVID-19 pandemic). In the context of the COVID-19 pandemic, "§ 3582(c)(1)(A) contemplates a sentence reduction for specific individuals based on the individuals' particular circumstances of where he is housed and his personal health conditions." *See Council*, 2020 WL 3097461, at *5; *United States v. Melgarejo*, No. 12-cr-20050, 2020 WL 2395982, at *3 (C.D.Ill. May 12, 2020).

Ultimately, however, it is Defendant's burden to establish that a "compassionate release" is warranted under the statute. *United States v. Wesley*, 2020 WL 3868901, *1 (D. Kan. July 9, 2020); *see also United States v. Bright*, 2020 WL 473323, at *1 ("extraordinary and compelling" imposes a heavy burden on a defendant seeking relief under Section 3582(c)(1)(A)).

In this case, the Defendant fails to make a compelling case that his medical conditions qualify as "compelling and extraordinary" under the commentary to section 1B1.13. Under that commentary, a Defendant must demonstrate either that he is suffering from a terminal illness under (A)(i); or that he has (1) a serious physical or medical condition, (2) a serious functional or cognitive impairment, or is (3) experiencing deteriorating physical or mental health because of the aging process. If relying on 1(A)(ii), a Defendant must also show that the medical condition

"substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. 1B1.13.

With respect to the Defendant's diagnosis of hepatitis C, the Court notes that this is not a new diagnosis. Defendant's medical condition was mentioned in the presentence investigation report and, while mentioned there, it was likewise noted that he was not receiving any treatment or medication for the condition. Moreover, this condition is not terminal nor has the Defendant asserted that his ability to provide self-care within the facility is diminished. These facts are confirmed by the Defendant's medical records, at least according to the Government.[1] Those records appear to show that the Defendant receives no medicine for hepatitis C; his only medication is for heartburn. The BOP, since the Defendant's transfer to its custody, has monitored his condition with bi-annual bloodwork which assesses his APRI[2] scores. Defendant's scores have consistently been in a range (<0.5) showing little to no fibrosis present in the liver and thus, no treatment has been warranted. Thus, Defendant remains stable without medication or treatment with every indication that he is able to provide self-care, and his activities of daily living are unaffected by this condition. Moreover, as the Court has noted, the Defendant is being monitored routinely and his medical condition is being maintained at the facility.

As for his assertion of obesity, the Center for Disease Control ("CDC") does recognize obesity as a comorbidity that increases the risk of serious injury or death from COVID-19. *See* People Who Are At Increased Risk for Severe Illness, CDC,

---

[1] The Court has not been provided medical records by either the Defendant or the Government and thus, the Court relies upon the Government's assertions as to what those records reveal. Ultimately, it is the Defendant's burden to demonstrate extraordinary and compelling circumstances exist sufficient to justify compassionate release.

[2] APRI stands for "aspartate aminotransferase to platelet ration index." It measures fibrosis of the liver for those with hepatitis C and is a non-invasive alternative to liver biopsies. https://www.healthline.com/health/hepatitis-c/apri-score.

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (last September 8, 2020). The Defendant's medical records confirm that the Defendant's weight has fluctuated over time from 240 pounds in December 2014, to 252 pounds in May 2020. The records further indicate that the Defendant lifts weights 5 times per week. No overall BMI score is listed but the Defendant has been counseled regarding diet, exercise and weight loss.

Setting that counseling aside, a 12-pound weight gain since 2014, particularly in light of weightlifting activities which may increase the Defendant's muscle mass, is not a substantial increase. Moreover, the fact that the Defendant is capable of performing weight-lifting activities clearly demonstrates that his obesity does not hinder his daily activities. Thus, the Defendant has not met his burden of proving "extraordinary and compelling" circumstances. *See United States v. Martin,* No. 8:10-CR-305-T-33AEP, 2020 WL 5369083, at *2 (M.D. Fla. Sept. 8, 2020) (defendant positive with COVID-19 and hypertension did not sufficiently demonstrate that his medical condition substantially diminished his ability to care for himself in the facility); *United States v. Thomas,* 2020 WL 5235672 (E.D. Cal. Sept. 2, 2020)(evaluating inmate at FMC Lexington with leukemia and determining that while leukemia is a serious medical condition, Defendant did not meet his burden of demonstrating that he is prohibited from providing self-care inside the facility); *United States v. Young*, No. 18-196(2)(DWF/KMM), 2020 WL 5350295 (Sept. 4, 2020 ("[T]he Statement clearly indicates that compassionate release is warranted only under truly extraordinary and compelling circumstances—namely, medical conditions which diminish the ability of the defendant to provide self-care in prison and from which he or she is not expected to recover.").

Next, Defendant discusses the hardship on his family as a result of his incarceration and his fear that he may contract COVID-19 and succumb to it. He is concerned that his family will

not be able to bear this additional burden or his death. While the Court is sympathetic to the Defendant's concern for his family's emotional well-being, the general threat of COVID-19—that is, the fear that it may infiltrate a prison's population—cannot justify compassionate release, *see United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release[.]").

Moreover, the Defendant has been housed at the current facility throughout the COVID-19 pandemic and has neither contracted the virus or tested positive for it. As of the date of this Opinion and Order, the BOP website shows that at Milan FCI there are currently no COVID-19 positive inmates, 86 inmates have recovered from the virus, and 3 have inmates have died. https://www.bop.gov/coronavirus/ (last visited November 12, 2020). While deaths and infections within the facility are not ideal, Milan FCI, when compared to other BOP facilities, has been able to manage its positive cases to avoid widespread infection, limit fatalities and mitigate the effects of the virus within its walls. *See, Melgarejo*, , 2020 WL 2395982, at *3 ("[A] prisoner [may] satisfy the extraordinary and compelling reasons requirement by showing that his particular institution is facing a serious outbreak of COVID-19 infections, the institution is unable to successfully contain the outbreak, and his health condition places him at significant risk of complications should he contract the virus."). Thus, the Court finds no basis for compassionate release on the basis of widespread transmission within the facility.

Finally, the Court must also assess whether the Defendant is a danger to society and whether the § 3553(a) factors warrant his release. The Court observes that the Defendant is requesting a nearly 12-year reduction in his sentence. The circumstances and nature of the Defendant's offense along with his prior criminal conduct are extensive. The Defendant, having

7

previously had two felony drug convictions, was an organizer or leader of criminal activity that included five or more participants and involved the possession with intent to distribute substantial quantities of cocaine. There is no question as to the severity of the Defendant's offense and that severity far outweighs any interest the Defendant has in compassionate release. Indeed, the Court imposed its 300-month sentence, a sentence that was binding on all parties pursuant to the plea agreement, to reflect the seriousness of the Defendant's offense, promote respect for the law as well as to afford adequate deterrence and to protect the public from further crimes of the defendant. The nature and circumstances of the Defendant's offense, his prior criminal history, and the relatively short portion of the sentence he has served, all warrant the conclusion that the significant sentence reduction the Defendant seeks would greatly undermine the above statutory purposes of sentencing.

This Court does not find extraordinary and compelling circumstances exist for the Defendant's release and a reduction of sentence is inconsistent with the § 3553(a) factors, Defendant does not meet the criteria for compassionate release and his motion is DENIED.

## **CONCLUSION**

Based on the foregoing, the Defendant's Motion (ECF No. 493) is DENIED.

So ORDERED on November 12, 2020.

> s/ *Holly A. Brady*
> JUDGE HOLLY A. BRADY
> UNITED STATES DISTRICT COURT